You've been appointed under the Criminal Justice Act and the court appreciates your help. Thank you, Your Honor. Good morning, Your Honors. May it please the court, I'm Paul Wolf for the appellant, John Graham. I'd like to start by telling a few of the facts of the case, just to start out there. Mr. Graham was extradited from Canada to the United States for the premeditated murder of Anna Mae Ackwash in 1975. It's a very old case. In 2007, Mr. Graham fought extradition to the United States. He was charged with premeditated murder only. That case went all the way to the Canadian Supreme Court of Justice. Mr. Graham was not successful. He was extradited. When Mr. Graham arrived in South Dakota, he was in district court. The district court dismissed the charge. That's been the subject of another Eighth Circuit appeal. I'm not really prepared to talk about that today, but the district court, the federal district court had no jurisdiction to hear that charge. So Mr. Graham was indicted in state court in South Dakota for premeditated murder and also for felony murder. And that's what makes this a very interesting appeal, because after his extradition proceedings were completed, he was indicted for something that is not a crime in Canada.  In between those times, he never returned. The extradition order, the initial extradition order, is the operative one. I think so, Your Honor, and I think that he should have been returned to Canada. And the fact that he was not returned to Canada deprived him of... That's not an issue. No, Your Honor. So we're reviewing the issue now that the court in Canada might have reviewed, which is whether the district or whether the state court or any court in the United States would have jurisdiction over a felony murder charge, because that should have been reviewed in Canada by the Canadians. But it's too late, and he was already convicted. And as things turned out, as fate would have it, he was acquitted, a jury acquitted Mr. Graham of premeditated murder, but they convicted him of felony murder based on kidnapping. So then it went up to the Supreme Court of South Dakota, as I understand it, on this same issue that you're arguing here. It did, Your Honor. Right, and they ruled that there was no bar to jurisdiction. Yes, Your Honor. This is a state habeas petition under Section 2254. Right. So we're here on a federal habeas, so you have to meet the high threshold to show that the state court either unreasonably applied, or clearly established law. Is that your position? Exactly, Your Honor. The standard is very difficult to meet. In our brief, we cited to four, I believe, Supreme Court opinions in an attempt to show that the clearly established law of the Supreme Court favors our position. Those cases are really splitting hairs about dual criminality, and the four cases we cited are looking at whether the law in one country is substantially analogous to the law in another country so that we can say that these two laws are . . . Before you even get there, it seems to me that the issue, as I understand these cases, is whether the extraditing country would regard the prosecution that occurs in breach of the extraditing treaty, the dual issue, principle under the treaty. Here we have an extradition for a specific crime and ultimately a prosecution for that crime and another crime with no intervening return to Canada. In the meantime, when the second crime is added, we have a consent to waiver of specialty from the extraditing country. Now, what case says that the extraditing country can't approve the expansion in this manner? In other words, there was no violation of the extraditing order. The prosecution that ultimately occurred was consistent with it, but in the meantime, the extraditing country approved the addition of other charges. I don't see where that violates any of the cases you're relying on. It doesn't violate the principle of specialty, Your Honor. It violates the principle of dual criminality. That's what's so important about this appeal is that the . . . Only if we say the Canadians' authorities were wrong in granting the consent to waiver. Well, Your Honor, what happened was that the Canadian judiciary . . . I'm not saying that, Your Honor. . . . and South Dakota violated AEDPA when it refused to second-guess the extraditing country's legal rulings. That's extraordinary to me. No, Your Honor. The Canadian court did not ever, ever consider this issue. When the Canadian courts considered Mr. Graham's extradition . . . The Ministry of Justice did. Yes, Your Honor. So that's where we are. I thought there was some judicial review. I don't care, I guess, whether there was judicial review or not. The operative authorities in Canada, operative to issue the specialty document issued . . . That is a diplomatic maneuver, Your Honor. The principle of specialty has no basis in law. It has no basis in the extradition treaty. Neither does Rousher, for that matter. This is all to do our best to be diplomatically sound. Well, Your Honor, the Rousher case was based on an extradition treaty, and so was Mr. Graham's extradition. It is. So is your argument. Well, we have extradition with a treaty or without a treaty. So those are the Rousher and the Kerr cases. Those are cases from the 1800s. Forget Kerr. Pardon me? Forget Kerr. Well, the Rousher case was based on an extradition treaty. And its principles, this dual sovereignty, this is all principles based on diplomacy. And the deference is to the extraditing country, which in this case, by its authorized officials, has said this is okay. This does not violate the dual sovereignty. Your Honor, the letter doesn't say that. It's in the addendum. It says what it does. It doesn't do that, Your Honor, because the specialty is designed for. It does not, Your Honor. It's a diplomatic principle that's based only on the rule of comity. But my client is relying on a treaty, and we've shown, particularly in our reply brief, why the treaty creates rights. So the treaty is equivalent to a federal law. My opposing counsel's position is not even based on law. It's based on what Your Honor is referring to, which is a diplomatic principle of specialty, which is not based on any treaty at all. But Mr. Graham's extradition was based on a treaty, and it follows the Rousher case and not the Kerr case. This confuses many different people, extradition versus rendition, because recently the United States has increased the use of rendition. Rendition is where you just grab somebody and you bring them across the border. I'm putting that aside. I'm saying that under this treaty, I think the issue under Jetter and Alvarez-Machin, the issue is whether the extraditing country would regard the prosecution as a breach of the treaty. You only have standing to make the argument on behalf of the extraditing country. You don't have freestanding authority under Rousher to freelance Canadian law. Well, we don't have it under Rousher, but in terms of whether a relator in extradition has rights, enforceable rights, and can enforce the treaty, that's settled law. And it's settled in the Eighth Circuit. It's even settled for specialty, which is not a rule of law. But for dual criminality, it's absolutely settled. What's the Eighth Circuit case you just referred to? There's two of them. The most recent is called Therion. So let's see. Well, the most recent case is actually Lehner v. Turner, 884 F. 2nd, 385 at page 388. And then there's another Eighth Circuit case, U.S. v. Therion, 813 F. 2nd, 146, and that's from 1987. So it's very, very well settled in the circuit, Your Honor, that a relator has standing to bring both of those issues. But they're both pre-McCain. Alvarez-McCain is one of the cases I principally relied on, U.S. v. Alvarez-McCain. There's two McCain cases. And that case was about an extradition treaty between the United States and Mexico. And that case found that that's a very strange case. That case found that the extradition treaty does not prohibit kidnapping, essentially. The DEA agents just brought somebody across the border with no procedure at all. That's called rendition. It's not really extradition. Once you have an extradition proceeding, you rely on an extradition treaty, then you have to enforce the provisions of the treaty. And a very important provision in that treaty is dual criminality. And that says you can't put me on trial for something that's not a crime in my country. Article 2 of the treaty says, quote, conduct which constitutes an offense punishable by both countries, right? Yes. That's the provision you're relying on. It says that. It doesn't say elements of a criminal statute. It says conduct which constitutes an offense punishable. Yes, Your Honor. By some crime or another. That's what the district court held, Your Honor. That is the reasoning of the district court. That's what you're relying on. But no. But your argument is don't focus on the facts. Don't focus on the conduct. Focus on whether the crime that the federal and state codes call felony murder can be found on the books of the Canadian criminal code. That's your argument, right? Yes, Your Honor. And the treaty says conduct. It doesn't say what's in the criminal code. Well, all the case law says dual criminality. And that is a dual criminality provision. And it replaced, in the earlier version of the treaty, it replaced a list of extraditable offenses. And that gets back to another argument that I've tried to make is the difference between a crime, which is a mens rea and an actus reus. So the acts that we're talking about are just an actus reus. And the problem that the Canadian Supreme Court had, that's the Valen Court case, which is in the appendix. The problem they had with felony murder, it's not that they didn't have a felony murder law. It's that they used to have a felony murder law. And then they said, well, we can't do this anymore because there's no mens rea and it doesn't make any sense. So there's very solid case law in Canada. And we had an expert testify for Mr. Graham who claims that he has appeared 25 times before the Canadian Supreme Court of Justice. The opposing counsel did not provide expert testimony on the Canadian law at all. So there's no question that felony murder is not recognized. Your client has standing to attack the Canadian law. Is that where you come down here? Your Honor, I don't think that I don't see why we are attacking any Canadian law. We're challenging the jurisdiction. You're reciting what Canadian law does and is and so forth and doesn't do in relation to this kind of conduct, aren't you? Well, I have to compare it to the U.S. law. I have to show that these two laws are substantially analogous. That's what dual criminality requires. So we have to show that Canada actually doesn't have a law. It says conduct and it says offense in the treaty. And that requires interpretation. If it says offense, I'm speaking without looking at notes, but if it says offense, then I think you're talking about something that's going to have to have a mens rea. But the Canadian Ministry of Justice looked at this specific indictment, right? Well, no, Your Honor. I thought when they issued the specialty document, they had the South Dakota indictment in hand. Yes, there's a one-page document that the opposing counsel included as an addendum to their brief, and the South Dakota prosecutors got the Canadian prosecutors to agree to this, but that bypassed the Canadian judiciary. So I don't think we can just talk about the Canadian government agreed to this. I don't think that that's fair to my client because he has rights under that treaty. That treaty is listed in the U.S. Code as enforceable law. I don't read McCain as saying he has rights under that treaty. He may have the authorization in U.S. law to make the argument that Canada would make on behalf of its sovereignty. That's the Rauscher and Kerr case, Your Honor. That issue is not really in the Alvarez-McCain case. But the Alvarez-McCain case... They discussed them. That's a rendition case with an extradition treaty. So that's a very strange case because there was an extradition treaty, and they found that the treaty doesn't include rendition. And they had to look all the way back to the Rauscher and Kerr case, which are over 100 years old, to make that determination. So I rely strongly on the Alvarez-McCain case because it was based on an extradition treaty. What case has permitted the extradited person to challenge a specialty document or, as you say, ignore it? I don't know, Your Honor, offhand, because I don't think specialty is an important issue in this case. I thought that the key decision that this court should follow were the Lehner v. Turner case and the U.S. v. Therion case. And those cases say that a relator does have standing. That's very clear. But they also say, don't they, that in those cases the home country had not consented to the prosecution? I don't know, Your Honor. Well, it's an important point if those are your lead cases. Therion says, while the asylum country may consent to extradite the defendant for offenses other than those expressly enumerated in the treaty, it did not do so here. And then it went on to say the defendant could raise an argument that the asylum country could have raised, that it was outside the scope of the treaty. But even if you're correct about your dual criminality point, isn't it a problem that Canada has consented? I think that's just another fact to look at. I don't think that Canada can consent and give a court jurisdiction that does not have jurisdiction. I think the treaty language is a law, and whatever this letter is from Canada is not a law. The extradited treaty gave him jurisdiction. He had an order of extradition under an extradited treaty, which gave jurisdiction to the United States courts to prosecute for premeditated murder. This is not a jurisdictional issue, is it? I don't think the letter gives anyone jurisdiction. I'm talking about the first order, the operative extraditing order. Yes, but that's only for premeditated murder. He was tried for premeditated murder. And acquitted. He was acquitted. But there's no question the South Dakota courts had jurisdiction to conduct this prosecution under the treaty. No, because it violates the dual criminality provision. I think that's jurisdictional. But what case says that? That an extradition treaty is jurisdictional? It is a code of many colors. The court had jurisdiction, by reason of the extraditing order, at least to conduct a premeditated murder. Now, if the local prosecutor says, and I want to charge him with rape, too, the court may be required by Rauscher to say, no, I dismiss that charge. It's not consistent with the treaty. I don't know, Your Honor. If a court, if a judge asked me, where's my jurisdiction, I would point to a law. I wouldn't point to a letter from a prosecutor. I'd say, here's the law. It says right here, there's the jurisdiction. So what law am I referring to? The treaty and the extraditing order. The treaty is the law, Your Honor. In the initial, what I said at the outset is the operative order is the extraditing order that he never returned after that order was issued. Additional things happen. And then, of course, if the hypothesis I'm spinning out is at least plausible, if it's more, if it's, it doesn't have to be much more than plausible for the South Dakota Supreme Court to rule that way and survive Ed Pugh review. On a plausible standard, Your Honor? Well, you know the language. Yes, Your Honor. The language that we quoted were for Supreme Court cases. And the language, I mean. The deferential standard, if the South Dakota Supreme Court has to do something constitutionally outrageous to be second-guessed in federal habeas. I'm not sure that that's in the record that this court is looking at. But the district judge sided with us on that. He just went the same way that Your Honor is going, thinking that dual criminality only requires facts and acts that could constitute a crime, even though it's not, even though it's not formulated into a crime. I think under Ed Pugh, South Dakota Supreme Court does not, is consistent with Ed Pugh if it makes that, if it makes that interpretation of this aspect of federal law. That may be true, Your Honor, but the district court did not go that way. So that would be a big change. And I think that I'd like to reserve the balance of my time for any questions, because there's a few issues that we haven't really gotten to yet. And I'd like to, my time is up also. I have a red light in front of me. Thank you. Okay. May it please the court. Counsel. It's well understood that federal courts are courts of limited jurisdiction. They have only the jurisdiction converged by the Constitution or statute. And here Graham claims that the U.S.-Canada Extradition Treaty is the law of the land with the same force and effect as a federal statute. But assuming that to be true, it simply begs the question of what section of the treaty authorizes a state or federal court to hear his standing claim. Graham's brief points to no, that's not a provision of the treaty, Your Honor. No, but it's government's controlling law for this court. That's when the United States violates the treaty and something on its end. You can then more or less sue the United States for its violation. No, but you have an authority that says it doesn't apply. Oh, the treaty. The principle. Absolutely, the treaty. The Rauscher principle. No, the Rauscher principle applies only when the United States is doing something violative. Then you can sue the United States. In the Supreme Court case, it says it's a one-way street. The Rauscher principle is a one-way street. Well, the question, operative question here is what Supreme Court case gives Graham's standing, and that's really the issue here. There's not one, no. Well, we have to interpret it. Rauscher gives somebody's standing to challenge the United States' violation of a treaty in a United States court, not the extraditing country's determination. To the extent the treaty mentions the jurisdiction of any court, it is limited to authorizing courts of the extraditing country, in this case Canada, to hear challenges to the specialty or dual criminality determinations of Canada's law enforcement or diplomatic personnel. Once surrendered, the extraditee is not allowed to have the court of the prosecuting country second-guess or overrule, in this case, Canada's determinations of its own law. Or even if it decides it doesn't want to extradite on any legal principle, they just want to extradite for diplomatic reasons. It doesn't have to have a reason. Canada doesn't have to have a reason if it just simply decides to consent to extradition. Any second-guessing by a United States court of Canada's determination is sort of the diplomatic equivalent of looking at a gift horse in the mouth. Authorities refute Graham's central response of assertion here that dual criminality confers in some way some standing that specialty doesn't. Both doctrines are byproducts of the principle of comity. As stated in Wathney, quote, in extradition treaties, there... ...where the home country did not consent. Don't they refute your jurisdictional argument? No. He, Graham's standing, if any, is derivative of Canada's. He can raise what Canada can raise. Okay. So once Canada's consented, they're not objecting any longer. If Canada doesn't object... They didn't accept it in the extraditing order. Correct. In the extradition... And the extraditing order was based on the treaty, right? That is the vehicle by which the extradition order is created. Canada didn't have to have a reason to kick him out of the country, but, in fact, they extradited him under the treaty. Consistent, right? That is the vehicle by which the order was entered for extradition. Correct. The treaty. Yes. And Canada's basis for allowing, if you will, allowing him to come here. Yes. And Canada can consent to that for any reason or basically no reason at all. But when? When? And how? That's what's being challenged. Sure. It's the consent to waiver of specialty signed by the Minister of Justice, which specifically says, references count three of the indictment, premeditated murder in violation of South Dakota codified law 22-16-4. That's not an act of the Canadian judiciary. We can ignore it. It doesn't have to be an act of the Canadian judiciary. I don't think you have any cases for this unusual situation either. Right, because there is no law that the South Dakota Supreme Court's decision is contrary to or a violation of that would require overturning its standing determination. Without the specialty document, the prosecution was inconsistent with the extraditing order. The extraditing order has no force in effect. What has the force in effect here is the ultimate determination by the Minister of Justice that they were going to extradite Graham for the reasons discussed in the order or, frankly, for any diplomatic reason. But the federal district court, when he arrived under the extraditing order, had allowed the federal prosecutor to add a felony murder charge or a rape charge or a DWI charge to the prosecution. There wouldn't have been, you'd say there's no standing under Rauscher to invoke that you can't do that? I would say that's exactly the circumstance where Rauscher would grant standing if Canada then subsequently objected to the addition of the new charge. Now, here, there was no new charge added. There has to be a subsequent objection? There has to be some kind of objection from Canada, yes, that, hey, wait a minute, we did not extradite him for this reason. We extradited him for the reasons in our extradition order. That didn't happen here. That didn't happen here. Actually, the Canadian court found that he could be prosecuted for this kind of conduct in Canada or the United States and shipped him down here, and the extraditing order doesn't have to specifically name the offense so long as the general conduct is covered by the Canadian's application of the law there and here, right? The justice or the executive or whatever it is who said we go ahead and do it because we prosecute these kinds of actions here as well. Exactly. Yes, the Minister of Justice said that this is going to be some form of homicide. It may not be technically felony murder. By specific name, and so we're quibbling over terms when the general thrust of the law provides for this. Absolutely, and frankly, even if it wasn't a crime in Canada, the Minister of Justice could still say we're going to turn him over anyway. So once they've done that. A step beyond that because Canada does prosecute people for killing other people like this woman has done, whatever the terminology of the statute or the prosecuting statute was anyway, right? I would say inherent in the extradition order is an underlying finding of dual criminality. As to count three, premeditated murder, and count one, I mean murder while in commission of any felony. So specifically mentioned in the extradition order. When you say the extradition order, are you referring to the consent to waiver of specialty, or are you referring to a different order? Yes, yes. There was an earlier order. Which was superseded by this order. No, wait a minute. Where's the earlier order in the appendix? It's not in my appendix, but. Is it in before us, the earlier order? I'm sure it's somewhere in the record, but I can't give an appendix citation here. And that was tied to the federal indictment, the earlier order? Did the federal indictment charge felony murder or just premeditated? Premeditated, is my recollection, yes. So the earlier order referred to federal indictment and listed that charge, and then you're characterizing this consent to waiver of specialty as a superseding extradition order, I guess is what you're calling it. Right, I mean, the Canadian Supreme Court may have said, we disagree that this is an offense under dual criminality, and the Minister of Justice could still step in and go, we don't care, as a matter of diplomacy, we're turning him over anyway. And that gets back to a point as well, that Mr. Graham never challenged anything beyond the premeditated claim in Canadian courts. He didn't challenge this consent document? No. Once he was charged with felony murder in state- In a Canadian court, he's asking. In a Canadian court, right. Yeah, I'm asking, could Graham have challenged this consent document in a Canadian court? He could have, but he didn't. You say there was a procedure available for him? Sure, but he didn't do it. And that's where his remedy lies, if anywhere, is in Canada. But he didn't avail himself of that. So his standing, and since Canada turned him over, without objection on the charges for which he was tried, he has no standing greater than Canada's. And under our habeas proceeding, he doesn't have standing to challenge the Canadians' activities, right? I would say he doesn't have standing to challenge, therefore the trial court or any court had no subject matter jurisdiction to hear any challenge. And at this stage, the question is, was the South Dakota Supreme Court's decision saying that he had no standing an unreasonable application of clearly established federal law? And that gets back to Judge Loken's point with me, where is the clearly established federal law? There is none. The only clearly established federal law is really the law clearly established within the circuit courts that he has no standing, including in this court in the Jetter case. That's really the central point of this. Any standing that Graham had was derivative of Canada's, and they abrogated it with the extradition order. And I don't want to belabor the point, but that's really the dispositive point. And unless the court has further questions, I'll yield the floor. Thank you, Your Honors. Give him two minutes for rebuttal. Your Honor, we haven't touched on the concept of a self-executing law yet. Treaties are self-executing. That's a very basic point of this case, is that an extradition treaty is very unlike other treaties. Other treaties require implementing legislation. An extradition treaty is immediately a U.S. law and is codified in the U.S. Code at 18 U.S. Code 1381, so it should be enforced by this court. The court shouldn't just simply rely on the Canadian government does this, but we've completely bypassed the Canadian judiciary, and we can't do that. Mr. Graham has to have a forum somewhere. I don't think we're doing that at all, counsel. I mean, just because you're saying that we're doing that doesn't make it true. I'm not following your argument. Thank you, Your Honor. I'm maybe too scared by the questions I've gotten so far. But really this is a law that has to be enforced. The extradition treaty is not just a diplomatic agreement, and a diplomat or a person in the political branch can make a decision like the political question doctrine and say, nope, this is a political issue, we're just going to give this person to the U.S., we're not going to treat it as a legal issue. He was extradited. We've enforced the extradition treaty. He was extradited. You're saying that what happened after he was extradited doesn't comply with Canadian law so that American law wouldn't be applicable. But the Canadian minister says he's there and he's yours and do with him as you see fit. I think that's a fair assessment, Your Honor. And our argument is simply that this is a law, and my client can enforce his rights under the law, and this is the forum where he is. This is the court that has jurisdiction over him. He had no opportunity to do this in Canada. All this that happened with the premeditated murder occurred after he was already extradited. Thank you, Your Honor. Thank you, counsel. Very unusual, interesting issues, and they've been nicely argued, and we'll take them under advisement.